A03A0105. In the Interest of T. T., a child.
(575 SE2d 913)

Blackburn, Presiding Judge.

Following his adjudication of delinquency for committing the offense of armed robbery, T. T. appeals, arguing that the evidence was insufficient to show that he was involved in the commission of the delinquent act. Finding no merit to this argument, we affirm.

> Where a juvenile is charged with an offense which for an adult would be a crime, the standard of proof in the lower court is beyond a reasonable doubt. On appeal[,] we thus apply the rule of *Jackson v. Virginia*,[1] which is whether a rational trier of fact could reasonably have found from the evidence presented proof that the juvenile committed the offense beyond a reasonable doubt. On appeal the Court is bound to construe the evidence with every inference and presumption in favor of upholding the findings of the trier of fact, here the trial court. Although the evidence here was not without conflict[,] the issues of the credibility of the witnesses and the resolution of conflicts in the evidence fall within the province of the trial court.

(Citations and punctuation omitted.) *In the Interest of M. J. F.*[2]

Viewed in the light most favorable to support the adjudication of the juvenile court, the evidence shows that on the afternoon of February 21, 2002, T. T., along with three other juveniles and two adults, Raheem Johnson and Lakisha Green, made plans to rob the Rack Room Shoes store at Oglethorpe Mall. That night, T. T. and his companions drove to the mall; as they drove, Green, whose idea it was to rob the store and who intended to sell the stolen shoes, gave the juveniles instructions on what shoes to steal.

T. T., Johnson, Green, and the three other juveniles entered Rack Room Shoes approximately thirty minutes before closing time. Green left after a few minutes and returned to the car, but T. T. and the others began pulling boxes of shoes from the shelves and trying them on. Because of the group's boisterous behavior, an employee was told

---

[1] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).
[2] *In the Interest of M. J. F.*, 191 Ga. App. 792 (1) (383 SE2d 173) (1989).

by the store manager to keep an eye on them. Another employee, who had also gone to the back of the store to check on them, testified that T. T. pulled a "footie" out, put it over his head, and said to his companions, "This is going to be my ski mask, you all."

As closing time approached, an employee told the group that if they were not going to buy the shoes they were trying on, they would have to leave the store; she urged T. T. and his companions to make their choices and bring them to the cash register for checkout. T. T. and the others approached the checkout counter at the same time with boxes of shoes in their hands. One of the juveniles, S. Q., pulled a pistol from his pocket, pointed it at a store employee, and warned him that "if we call this in, he was going to light us up." At this point, T. T., carrying a box of Rockport shoes, and the others ran from the store and out to the parking lot, where Green was waiting for them with the car.

About 30 minutes after the robbery, T. T. and his companions were apprehended by a police officer as they sat in the car in the parking lot of a shopping center. The shoes taken from Rack Room Shoes and the pellet pistol used in the robbery were found in the car. Rack Room Shoes employees were brought to the parking lot, and T. T. was identified as one of the people who had robbed the store by both the employee who had been sent to watch the group, and the employee who had seen T. T. pull the footie over his face and heard him tell his companions that the footie would be his ski mask. T. T.'s fingerprints matched prints lifted from a box of Rockport shoes found in the getaway car.

Applying the standard of *Jackson v. Virginia*, supra, and reviewing the evidence in a light most favorable to the adjudication of delinquency, the record reveals ample evidence from which any rational trier of fact could have found beyond a reasonable doubt that T. T. knew of the plan to rob Rack Room Shoes, took merchandise from the store as an accomplice, held the store employees at gunpoint, and, therefore, participated in the armed robbery. T. T. denied knowledge of or participation in the robbery. The testimony of T. T.'s co-defendants at trial contradicted their statements, given to the police shortly after their apprehension, that T. T. was involved in the robbery. However, as set forth above, "[w]e do not weigh the evidence or determine witness credibility but defer to the juvenile court's factfinding." *In the Interest of J. W.*[3] The prior inconsistent statements of T. T.'s co-defendants were admissible as substantive evidence of T. T.'s guilt, and the juvenile court, as factfinder, determined

---

[3] *In the Interest of J. W.*, 249 Ga. App. 849, 852 (4) (549 SE2d 802) (2001).

issues of credibility. *Gibbons v. State.*[4] Here, "[t]he juvenile court judge, as factfinder, evidently disbelieved [T. T.'s] protestation of innocence, which is the factfinder's prerogative." (Punctuation omitted.) *In the Interest of A. L.*[5]

*Judgment affirmed. Ellington and Phipps, JJ., concur.*

DECIDED JANUARY 9, 2003.

*Richard C. Metz,* for appellant.
*Spencer Lawton, Jr., District Attorney, Jeffrey S. Hendrix, Assistant District Attorney,* for appellee.

---

[4] *Gibbons v. State,* 248 Ga. 858, 863 (286 SE2d 717) (1982).
[5] *In the Interest of A. L.,* 255 Ga. App. 215, 216 (1) (564 SE2d 823) (2002).
[1] *Allen v. Hub Cap Heaven,* 225 Ga. App. 533, 534 (484 SE2d 259) (1997).