663 S.E.2d 270 (2008)
In the Interest of A.H., a child.
No. A08A0702.
Court of Appeals of Georgia.
May 22, 2008.
Reconsideration Denied June 9, 2008.
Harrison & Harrison, Stephen P. Harrison, McDonough, for appellant.
Tommy K. Floyd, District Attorney, Mary Evans-Battle, Assistant District Attorney, for appellee.
ADAMS, Judge.
A.H. was adjudicated delinquent for her role in an automobile collision that caused serious injury to an adult and the death of a fetus.[1] On appeal she contends the evidence was insufficient to support the finding, which we judge by the standard set forth in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979):
Thus, we construe the evidence in favor of the juvenile court's findings and determine whether a rational trier of fact could have found beyond a reasonable doubt that the juvenile committed the acts charged. We do not resolve conflicts in the evidence or determine the credibility of the witnesses. Those issues are for the juvenile court to decide.
*271 (Footnotes omitted.) In the Interest of R.J.S., 277 Ga.App. 74, 625 S.E.2d 485 (2005).
Construed in favor of the findings, the evidence shows that A.H., age sixteen years and six weeks at the time and an inexperienced driver, was driving a car accompanied by a friend, and the two intended to pick up another friend for school on the morning of December 5, 2006. As A.H. drove east on a two-lane road, she approached a red truck with a trailer from behind and attempted to pass. The section of road was between two hills, each of which restricted visibility, but part of the section in between was marked as a passing zone; the speed limit was 45 miles per hour. Although A.H. had ridden down this road in the past, she had never driven a car along this road before. She testified that she was driving 45 to 47 miles per hour as she approached the truck. She then asked her friend, who had a learner's permit, whether she should pass. Although the friend testified that she checked to see if they were in a passing zone, she did not check to see how much further the passing zone extended ahead of them. When A.H. started to pass, she was traveling 50 miles per hour. But when she crossed into the westbound lane, she and the driver of the red truck accelerated simultaneously. One witness testified that "it looked like they was racing, so to speak . . . actually I thought it was two teenagers playing around before school." A.H.'s passenger testified, "Then the truck won't let us over, so it's like a racing, it's like a battle, like the truck is not going to let us over." A.H. began to approach the second hill still in the westbound lane. The road also curved at that point, and A.H.'s passenger testified that they were still in the westbound lane as they approached the curve and the hill, and that A.H. never slowed down. A.H. admitted that she never considered slowing down to let the truck go on. As A.H. was "almost at the top of the hill," the truck braked to let the car in.
William McGowan was driving west on the same road, approaching the hill in front of A.H. As he crested the hill, he saw the car coming toward him "very fast" and starting to pass the truck, so he decelerated. He testified, "I thought the car was going to go back in, but it kept coming around." McGowan had to brake to avoid getting hit, and the car then pulled back onto the east lane "very quickly." Another witness testified that "the red truck realized that I've got to let this car in or there's going to be a head-on collision here." The road was marked with a solid yellow line at that pointa no passing zone. As A.H. returned to her lane, she briefly went off the road, which had no paved shoulder, but then she overcorrected and lost control of the car. The car turned and went across the road into the westbound lane and was struck by an oncoming westbound car.
A.H. testified that she began her pass in the passing zone and that she checked to make sure the road was clear and that she had room to pass. And at the time that the truck sped up, she believed she was still in the passing zone. A witnesses testified that initially, A.H. had sufficient room to pass. But other testimony together with the accompanying photographs show that A.H. completed the pass well past the end of the passing zone. A.H. even testified that she lost control after she crested the hill. And the collision occurred well outside of the marked passing zone somewhere past the top of the hill.
The driver of the westbound car was eight months pregnant at the time and she suffered injuries including loss of the fetus. Her two sons, who were riding in the back seat with seatbelts on, had minor injuries. A.H. was charged with traffic violations of passing in a no-passing zone and driving in violation of license restrictions because she had a passenger in the car. She was also charged with delinquency for reckless driving for passing in a no-passing zone, serious injury by motor vehicle, and feticide. The juvenile court ruled against A.H. on all counts.
There was ample evidence to support the findings. OCGA § 40-6-46(b) provides "no driver shall at any time drive on the left side of the roadway within such no-passing zone or on the left side of any pavement striping designed to mark such no-passing zone throughout its length." It is clear from the testimony and the evidence that although *272 A.H. may have begun to pass in a passing zone, she failed to consider how far the passing zone continued and she continued to pass at a high rate of speed well into the no-passing zone knowing she was approaching the crest of a hill and a curve. Yet she never once sought to slow down and return to her lane. A.H. contends the accelerating truck prevented her from returning to her lane. See OCGA § 40-6-40(a)(2) (not required to stay right when there is an obstruction requiring crossing the center line). But regardless of whether the truck driver attempted to prevent her from passing, she was not prevented from slowing down to return to her lane. Thus OCGA § 40-6-40(a)(2) is not controlling per se. And although a moving vehicle may constitute an obstruction under that Code section, the trier of fact must resolve the question of whether under the circumstances and conditions present at the time, such a vehicle is an obstruction sufficient to create an exception to passing in a no-passing zone. See generally Smith v. Lott, 246 Ga. 366, 271 S.E.2d 463 (1980).
Judgment affirmed.
SMITH, P.J., and MIKELL, J., concur.
NOTES
[1] On appeal of cases of alleged delinquency, unruliness, or deprivation the anonymity of the child shall be preserved by appropriate use of initials. OCGA § 15-11-35.